OPINION
{¶ 1} This is an appeal from the judgment of the Henry County Court of Common Pleas which sentenced defendant-appellant Mark R. Duncan ("Duncan") to fifteen years in prison.
 {¶ 2} Over the years, Duncan and his wife have fostered several children in their home. Specifically in 1995, Duncan at the age of 35 and his wife became the foster parents of a twelve year-old-girl whom they later formally adopted. According to Duncan, the girl's past included posing for pornographic material when she was only ten years old. Duncan and his wife also had two young biological children at that time. On January 6, 1996, Duncan by his own admission, had sexual intercourse with his then twelve-year-old daughter (victim) at their home. Thereafter, according to the victim, Duncan forced her to have some type of sexual contact with him two or three times weekly for the next five years. The sexual activity included sexual intercourse, oral sex and anal sex wherein he would not use a condom. The victim also asserts that when the abuse began, Duncan would force himself on her and when she threatened to tell Duncan's wife, Duncan pinned her up against a wall in the garage and threatened to kill her if she told anyone.
 {¶ 3} The victim also recounts an incident which happened on July 4, 1998. She asserts that Duncan and a friend of his, Mark Ferman ("Ferman") were camping at the pond in the front yard of Duncan's home and that the two gave her alcohol and marijuana. She stated that while she was intoxicated, Duncan and Ferman had sex with her separately and at the same time. Ferman corroborated that both Duncan and he had sex with the victim and also noted that he returned to camp with Duncan on Labor Day weekend in 1999 at which time nearly the same events took place again. Ferman also noted that while he and Duncan were having sex with the victim, his and Duncan's sons were in a tent nearby.
 {¶ 4} The abuse continued until the victim left home and joined the military in April 2001. While in the military, Duncan wrote her several letters one of which stated "I totally forgive you for any trespass against me and lift my curse I have put on you" and "our souls connected, we were good together." Furthermore, Duncan stated in a letter that he would hurt her fiancée if she ever brought him home. On August 24, 2001, Duncan's wife overheard Duncan upset on the telephone with the victim. After he hung up the phone, Duncan admitted to his wife that he had been having sex with the victim but that it happened because the victim was the aggressor. Duncan's wife called the police who then spoke with the victim.
 {¶ 5} On November 1, 2001, Duncan was indicted on twelve counts of rape by force or threat of force, felonies of the first degree pursuant to R.C. 2907.02. On August 13, 2002, Duncan pled guilty to twelve counts of sexual battery, felonies of the third degree, under R.C. 2907.03(A)(5). As part of his written plea, Duncan acknowledged that he could be sentenced to five years on each count.
 {¶ 6} Prior to sentencing, a pre-sentence investigation (PSI) was performed. The PSI indicated that Duncan had a prior criminal record including two D.U.I.s, an assault conviction, and a Telephone Harassment conviction and that he used marijuana weekly until the time of his arrest. Relating to the current offense, the PSI preparer noted "Defendant Duncan seemed to have a warped sense of what was taking place, almost as if he was doing her a favor by having sex with her." Furthermore, the preparer noted, "It appears Defendant Duncan is willing to blame the victim for the sexual relationship they were involved in." The PSI also included the victim's sentencing recommendation which included statements from both the victim and Duncan's wife. The victim gave the following statement,
I'd really like a hard sentence given to Mark Duncan. I am scared of that man and I am worried that if he gets a light sentence and he is released, he will hurt me. I can say without a doubt that I fear for my life and the life of my child. All I want is a normal life for me and my child and I don't think I could get one knowing that he could get off easy. I am trying to get the scared little girl inside me a little peace and I am asking, no begging, for your help.
 {¶ 7} Duncan's wife indicated that she attends counseling regarding the incident and is fearful of Duncan and any retaliatory actions by him against her or her two children. Furthermore, Duncan's wife stated that as a result of Duncan's actions, she has lost among other things, her home and car and that the total expended is in excess of $80,000.
 {¶ 8} Duncan was also examined by the Court Diagnostic and Treatment Center and a report was filed in which the examiner noted,
The relationship with the victim seemed to vacillitate [sic] in role and content, depending on Mr. Duncan's needs at the time. The victim was merely an extension of what Mr. Duncan, in his narcissistic manner, needed her to be and not based on her needs as a child or a daughter. The relationship of the victim with Mr. Duncan was no doubt confusing to her, and typically in this type of situation, will have long reaching consequences on a girl's ability to develop self-esteem and healthy adult relationships. Moreover, it appears that the victim was quite vulnerable to exploitation due to a past peppered with abuse and neglect by other parental figures. To justify his own behaviors, Mr. Duncan pathologized the victim and portrayed her as a sexually provocative aggressor who forced him to comply with her sexual demands.
 {¶ 9} Furthermore, as to sexual offender classification, the report stated that while Duncan was not likely to reoffend with strangers, he should be labeled as a sexually-oriented offender as he would "tend toward targeting those who are close to him and in his immediate family environment."
 {¶ 10} On November 22, 2002 a classification and sentencing hearing was held. The State requested that Duncan be sentenced to forty-eight years in prison. At that hearing Duncan stated in part "I feel sorry for Jessie, I really do, you know, and I, I wish her the best. I hope she has a very happy life but we had a, you know, a different relationship. I mean it was, it turned out to be more of a friendship than as a father." Duncan was sentenced to three years on each of nine counts to run concurrently and four years on each of the remaining three counts to be served consecutively for a total of fifteen years in prison.
 {¶ 11} Duncan now appeals asserting two assignments of error of which the second will be discussed first.
The trial court erred by failing to inform the defendant/appellant at his sentencing hearing of his right to appeal in violation of Criminal Rule 32.
 {¶ 12} Crim.R. 32(B) provides that the trial court is to notify a defendant of his right to appeal a sentence which results from a serious offense. In this case, the trial court advised Duncan that he had limited appellate rights and that he must file his appeal within thirty days of the date of his sentence. However, even had the trial court failed to advise Duncan of his right to appeal, there was no prejudice to Duncan as he filed his appeal within the requisite time frame. Consequently, Duncan's second assignment of error is overruled
 {¶ 13} Duncan's first assignment of error asserts:
The trial court erred in sentencing defendant/appellant to fifteen (15) years in prison for his conviction of twelve (12) counts of sexual battery, each a felony of the third degree in violation of Ohio Revised Code § 2929.11, § 2929.12 and § 2929.13.
 {¶ 14} In reviewing a felony sentence, an "appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing" if it finds by clear and convincing evidence
(1) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division E(4) of section2929.14, or division (H) of section 2929.20 of the revised code, whichever if any is relevant; [or]
(2) That the sentence is otherwise contrary to law.
R.C. 2953.08(G)(2). Moreover, the trial court is in the best position to make the fact-intensive evaluations required by the sentencing statutes as the trial court has the best opportunity to examine the demeanor of the defendant and evaluate the impact of the crime on the victim and society. State v. Martin (1999), 136 Ohio App.3d 355, 361.
 {¶ 15} The general purpose of sentencing is to punish the offender and to protect the public from future offenses. R.C. 2929.11. Furthermore, the sentence should not be demeaning to the seriousness of the offender's conduct and its impact on the victim and consistent with that given to similar crimes committed by similar offenders. R.C. 2929.11. Accordingly, when sentencing a defendant who has been convicted of a felony, the trial court must evaluate the factors set forth in 2929.12(B) and (C) relating to the "seriousness of the conduct" which include in relevant part whether the defendant has a prior criminal conviction and whether the victim suffered serious psychological or economic harm, whether that harm was exacerbated by the age of the victim, and whether the offender's relationship with the victim facilitated the offense. The court must also evaluate the factors set forth in 2929.12(D) and (E) relating to the "likelihood of the offender's recidivism" which includes in relevant part whether the offender shows genuine remorse. To determine whether these factors are present, the trial court may examine the record, the testimony from any witnesses at the hearing and a PSI, if one is prepared. R.C. 2929.19(B)(1).
 {¶ 16} R.C. 2929.14(A)(3) provides that an offender who commits a felony of the third degree may be sentenced from one to five years in prison. Accordingly, the court may sentence the offender to more than the minimum sentence if it finds that the seriousness of the offender's conduct would be demeaned or that the public would not be adequately protected. R.C. 2929.14(B)(2). In evaluating whether R.C. 2929.14 has been satisfied, the trial court should look to the factors laid out in R.C.2929.12. Martin, 136 Ohio App.3d at 362.
 {¶ 17} In this case, Duncan argues that the trial court failed to adequately consider the factors in R.C. 2929.12. We disagree. The trial court noted at the sentencing hearing,
The court's view of your conduct is one of shame. As I stated previous, your conduct, your judgment is so lacking, in terms of any sense of values or responsibility. You said it yourself, you were the adult. To expect anyone to believe that a thirteen year old girl made you do this is preposterous. The effect on your wife and your children and your parents and your other relatives that are here today, such far-reaching consequences, its hard to fathom how you could forsake all that, their feelings, totally break up your own immediate family and this to say nothing of the effect on the victim herself.
The relationship of the victim with Mr. Duncan was no doubt confusing to her and, typically, in this type of situation, will have long reaching consequences of the girl's ability to develop self-esteem and healthy adult relationships. Moreover, it appears that the victim was quite vulnerable to exploitation due to a past peppered with abuse and neglect by other parental figures.
Truly a sad, sad commentary when a young girl who was placed in your care was abused yet again.
 {¶ 18} It is clear from these statements and that the trial court clearly considered the psychological damage incurred by the victim and how Duncan's role as father figure exacerbated these injuries when it determined that the shortest prison term would demean the seriousness of the offense.
 {¶ 19} However, we would further note that we find it deeply disturbing that appellate counsel argues in his brief to this court that there is no psychological or physical harm to the victim present in a case where a father has sexual relations with his adopted daughter for five years beginning when she is twelve years old and has on two occasions invited an adult friend to participate. While we would ordinarily be cautious about attributing an argument of appellate counsel directly to the appellant in reviewing sentencing factors in the trial court, in this instance the findings of the trial court, the PSI and the psychological evaluations unfortunately support the conclusion that counsel's argument actually reflects the appellant's position regarding his own conduct.
 {¶ 20} We also find it disturbing that based upon the trial court's concurrent sentence as to the first nine counts of the indictment, the appellant will only serve four months for each of these counts, one of which involved sexual conduct with a child under thirteen years of age. In all, appellant was eligible to receive sixty years in prison in this case, but was lucky enough to receive only fifteen years in prison despite the state's recommendation of forty-eight years and despite the fact that the record and findings of the trial court would clearly have supported a greater sentence.
 {¶ 21} In sum, this court would unanimously favor utilizing its authority under R.C. 2953.08(G)(2) to reverse the judgment of the trial court and remand the case with instructions to increase appellant's sentence. However, to do so we would have to find that the sentence which the trial court imposed was contrary to law pursuant to R.C.2953.08(G)(2)(b)[1] and this court has consistently held that "`[a] sentence imposed within the statutory limits and upon consideration of the statutory criteria is generally within the trial court's discretion and will not be reversed on appeal.'" State v. Agner (Aug.3, 2000), Allen App. No. 1-2000-04 at *1, 2000-Ohio-1732, quoting State v. York (July 9, 1998), Van Wert App. No. 15-98-07. As Duncan was sentenced within the statutory guidelines after consideration of the appropriate statutory criteria, Duncan's assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
WALTERS and CUPP, JJ., concur.
[1] R.C. 2953.08(G)(2)(a) is not applicable in this case.